**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| E.M., | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 19-657 (RC) |
| | : | | |
| v. | : | Re Document No.: | 80 |
| | : | | |
| SHADY GROVE REPRODUCTIVE | : | | |
| SCIENCE CENTER P.C., | : | | |
| | : | | |
| Defendant. | : | | |

<u>**MEMORANDUM OPINION**</u>

**DENYING PLAINTIFF'S SECOND MOTION FOR PRELIMINARY INJUNCTION**

## I. INTRODUCTION

Plaintiff E.M. is a former patient of Shady Grove Fertility ("SGF"),[1] a fertility treatment

center whose professional services she used in an effort to conceive a biological child.  E.M.

began this suit in 2019 after she was dismissed by SGF as a patient, an act E.M. alleges was

retaliatory since it was made after she accused SGF of discriminating against her based on her

marital status (among other factors), in violation of the D.C. Human Rights Act ("DCHRA"),

D.C. Code § 2-1402.31.  Since the dismissal, SGF has maintained that it would pay to transfer

E.M.'s frozen eggs to another medical provider in the area, where E.M. could resume her desired

fertility treatments.  But E.M. has resisted the idea of having her eggs moved or moving to

another fertility practice, as she thinks that treatment at SGF gives her the best chance of

---

[1] The named Defendant is Shady Grove Reproductive Science Center P.C., a Maryland
professional corporation that is registered as a foreign corporation with the Corporations
Division of the D.C. Department of Consumer and Regulatory Affairs.  *See* Compl. ¶ 2, ECF No.
2.  Defendant typically refers to itself, however, as "Shady Grove Fertility Center," "Shady
Grove Fertility," or simply "SGF" for short.  *See id.*  The Court uses the SGF abbreviation in this
opinion, which is also the practice that the parties tend to follow in their filings.

successfully becoming pregnant and carrying to term.  She therefore brought this lawsuit, seeking not only money damages but a permanent injunction preventing SGF from dismissing her from its practice and discontinuing her treatment.

Presently before the Court is E.M.'s second motion for a preliminary injunction which would require SGF to resume E.M.'s treatment while her lawsuit is pending.  According to E.M., such relief is necessary because her biological clock does not permit her to delay treatment, moving her eggs to another practice would make them less viable, any other clinic would provide inferior care, and taken together depriving her of SGF's services "impinge[s] on her fundamental right to pursue procreation."  Mem. Supp. of Pl.'s Second Mot. for Prelim. Inj. ("Pl.'s Mot.") at 21, ECF No. 81.  This is not E.M.'s first attempt to receive injunctive relief.  At the beginning of the litigation, she filed a similar motion for a preliminary injunction, which was denied on May 7, 2019.  *See generally E.M. v. Shady Grove Reprod. Sci. Ctr.*, No. 19-cv-657, 2019 WL 2010523 (D.D.C. May 7, 2019).  In the time since E.M.'s first motion, discovery has closed and her motion for partial summary judgment has been denied, while SGF's motion for summary judgment was granted-in-part and denied-in-part.  *See E.M. v. Shady Grove Reprod. Sci. Ctr.,* No. 19-cv-657, 2020 WL 6158575 (D.D.C. Oct. 21, 2020).  The Court will deny E.M.'s second motion for a preliminary injunction as it has again concluded that the issuance of a preliminary injunction would not be an appropriate exercise of its discretion.  The outcome of the summary judgment briefing indicates that E.M. cannot demonstrate a strong likelihood of success on the merits, and the Court remains unconvinced that a preliminary injunction under these circumstances is in accord with the balance of equities or public interest.  Notably, the current hostility between the parties and actions taken by E.M. make reinstatement infeasible as this case continues onward toward trial.

## II.  FACTUAL BACKGROUND

The Court has already explained the factual background of this case in detail in its prior Memorandum Opinions.  *See Shady Grove*, 2020 WL 6158575 at *1–5; *Shady Grove*, 2019 WL 2010523 at *1–5.  The Court assumes familiarity with its prior opinions and confines discussion to the facts most relevant to the present motion.

On June 23, 2020, E.M. filed a second motion for a preliminary injunction requesting that this Court "exercise its equitable authority and statutory authority under the DCHRA to immediately enjoin SGF and allow E.M. to complete her fertility preservation treatment with SGF."  Pl.'s Mot. at 31.  E.M. asserts that a different outcome than that of her first motion for a preliminary injunction—which was denied— is warranted on the grounds that there is now a "more robust factual record" now that discovery is concluded.  *Id.* at 6.  In addition to the close of discovery, in the interim period the Court also decided both parties' summary judgment motions, denying E.M.'s motion for partial summary judgment and granting-in-part and denying-in-part SGF's motion for summary judgment.  *See Shady Grove*, 2020 WL 6158575, at *45.  In contrast to her first motion for a preliminary injunction, E.M. now characterizes her injury as a violation of her civil rights, stating that a deprivation of SGF's fertility services causes an irreparable harm as it violates her "fundamental right to pursue procreation."  Pl.'s Mot. at 21.  She characterizes her request— "to be treated like any other patient at SGF"— as "an extremely simple remedy" that would "restore the parties to the *status quo ante*."  *Id.* at 8–9.  She also emphasizes the time sensitive nature of her motion, stating that in light of "this Court's full docket and . . . [the] global pandemic" she needs "equitable injunctive intervention by this Court now."  *Id.* at 3 (emphasis in original).

SGF opposes E.M.'s second motion for a preliminary injunction.  *See* Def.'s Opp'n to Pl.'s Second Mot. for Prelim. Inj. ("Def.'s Opp'n"), ECF No. 86.  SGF argues that E.M. "makes the same arguments as before, offers no reasoning why this Court's original ruling was in error and presents no additional evidentiary support for this Court to grant the injunctive relief she seeks."  *Id.* at 3.  SGF also disputes E.M.'s assertion that her requested injunction is a "simple" remedy and that she can "be treated like any other patient at SGF."  *See id.* (quoting Pl.'s Mot. at 9).  SGF reiterates that "[t]he parties' relationship is irretrievably broken," and that the treatment E.M. seeks to resume is far from "simple" and "could easily stretch into a five-year time span" depending on various factors.  *Id.* at 3–4.

### III.  LEGAL STANDARD

"A preliminary injunction is 'an extraordinary remedy that may only be awarded upon a clear showing that the [movant] is entitled to such relief.'"  *John Doe Co. v. Consumer Fin. Prot. Bureau*, 849 F.3d 1129, 1131 (D.C. Cir. 2017) (alteration in original) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)).  Because they are such an extraordinary form of judicial relief, they are to be granted sparingly.  *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

 "A plaintiff seeking a preliminary injunction must establish [(1)] that he is likely to succeed on the merits, [(2)] that he is likely to suffer irreparable harm in the absence of preliminary relief, [(3)] that the balance of equities tips in his favor, and [(4)] that an injunction is in the public interest."  *Winter*, 555 U.S. at 20.  Of these factors, likelihood of success on the merits and irreparable harm are particularly crucial, and a court "may deny a motion for preliminary injunction, without further inquiry, upon finding that a plaintiff is unable to show <u>either</u> irreparable injury or a likelihood of success on the merits."  *Standing Rock Sioux Tribe v.*

*U.S. Army Corps of Eng'rs*, 205 F. Supp. 3d 4, 26 (D.D.C. 2016) (emphasis in original); *see also Howard v. Evans*, 193 F. Supp. 2d 221, 228 (D.D.C. 2002) (noting "a preliminary injunction may only issue when the movant demonstrates a showing that supports all four of the preliminary injunction factors.") (collecting cases). For without a "substantial indication" of likely success on the merits, "there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review." *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 38 F. Supp. 2d 114, 140 (D.D.C. 1999) (quoting *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc*., 559 F.2d 841, 843 (D.C. Cir. 1977)).

Even if the movant can make an independent showing of the first two factors, relief does not issue automatically. Rather, as the third and fourth factors suggest, a preliminary injunction is an equitable remedy committed to the court's "sound discretion," *Winter*, 555 U.S. at 24 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)), and is "never awarded as of right," *id.*

The Court also takes note that this is E.M.'s second attempt to receive injunctive relief. The Supreme Court has cautioned lower courts to be "loathe" to reconsider issues already decided "in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." *LaShawn A. v. Barry*, 87 F. 3d 1389, 1393 (D.C. Cir. 1996) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988)).[2] The burden is thus on E.M. to demonstrate that the Court's initial determination "was

---

[2] This is referred to as the law-of-the-case doctrine, that "the *same* issue presented a second time in the *same case* in the *same court* should lead to the *same result." LaShawn A*, 87 F.3d at 1393 (emphasis in original). While E.M. characterizes her motion as "explicitly not a motion for 'reconsideration' of the Court's initial denial of E.M.'s First P.I.," Pl.'s Mot. at 6, citing that her second motion is based instead on the more developed factual record and the fact that the Covid-19 pandemic has indefinitely postponed civil jury trials, because the underlying

clearly erroneous or that discovery has materially changed the proper analysis." *U.S. Airline Pilots Ass'n v. Pension Benefit Guar. Corp.*, No. 09-cv-1675, 2011 WL 13273132, at *2 n.1, *7 (D.D.C. Mar. 14, 2011) (denying renewed motion for preliminary injunction after observing "law-of-the-case doctrine . . . places a heavy thumb on the scales in favor of denying the [plaintiff's] motion").

## IV.  ANALYSIS

### A.  Substantial Likelihood of Success on the Merits

In denying E.M.'s first motion for the preliminary injunction, this Court assumed "for the sake of argument" without deciding that E.M. was likely to succeed on the merits of her claims against SGF. *Shady Grove*, 2019 WL 2010523, at *5.  Given the events that have transpired since the Court last considered this issue, namely, the close of discovery and determination of both parties' summary judgment motions, the Court is confident it can now properly assess this factor.

The movant requesting a preliminary injunction bears the burden of demonstrating a "substantial likelihood of success on the merits." *Howard*, 193 F. Supp. 2d at 226.  In evaluating this factor, the Supreme Court has instructed that "the requirement for substantial proof is much higher" for a preliminary injunction than in a motion for summary judgment. *Mazurek*, 520 U.S. at 972 (noting "[i]t frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion.") (emphasis in original) (citation omitted).[3]  But E.M. failed to provide the

facts of the case have not changed, the Court will evaluate these new factors in light of the law-of-the-case doctrine.

[3] E.M. argues that the standard is reversed—that the "no genuine issue of material fact" standard used at summary judgment under Fed. R. Civ. P. 56(c) is "more rigorous" than the

Court with the proof required to succeed on her claims even under the lower summary judgment standard. *See Shady Grove*, 2020 WL 6158575, at *1 (declining to grant E.M.'s motion for partial summary judgment). Indeed, the Court found instead that it was SGF that was entitled to summary judgment on many of the claims in this case. *Id.* ("SGF is entitled to summary judgment on certain theories of DCHRA liability, on contract and quasi-contract claims relating to E.M.'s egg-freezing procedures, and on all E.M.'s fraud-related claims," and SGF was entitled to partial summary judgment "[o]n E.M.'s claims under a D.C. consumer protection statute, on her unjust enrichment claims, and on her claim for intentional infliction of emotional distress."). As a result, the Court need not delve into the intricacies of each claim given that the summary judgment determination has shown already that E.M. is unable to demonstrate a substantial likelihood of success on the merits under the even higher preliminary injunction standard.

While several of E.M.'s claims survived summary judgment, she also cannot rely on these claims to show a substantial likelihood of success on the merits. The party requesting a preliminary injunction is "obliged to establish a clear and compelling legal right thereto *based upon undisputed facts*." *In re Navy Chaplaincy*, 928 F. Supp. 2d 26, 36 (D.D.C. 2013) (internal citations and quotation marks omitted), *aff'd*, 738 F.3d 425 (D.C. Cir. 2013) (emphasis added). So when the factual record "presents a number of disputes," as it does for E.M's claims that survived summary judgment, the required clear and compelling legal right cannot be established. *Id.* Consequently, in situations such as these "court[s] cannot conclude that [the] plaintiff has

---

"clear showing" required for a preliminary injunction. Pl.'s Mot. at 10. But she provides no support for this assertion and this claim is directly undermined by the Supreme Court's specific directive in *Mazurek*. In that case, the Supreme Court dictated that a plaintiff must make "a clear showing" of likelihood of success on the merits and emphasized that this standard of proof for a preliminary injunction was "much higher" than that in a motion for summary judgment. *See* 520 U.S. at 972 (reversing a lower court's grant of a preliminary injunction due to the plaintiff's failure to properly show a likelihood of success on the merits).

demonstrated a substantial likelihood of success on the merits." *Id.*; *see, e.g.*, *Davis v. Billington*, 76 F. Supp. 3d 59, 64 (D.D.C. 2014) (holding that where cross-motions for summary judgment were denied due to "outstanding factual disputes," the plaintiff "f[ell] well short of demonstrating a *substantial* likelihood of success on the merits").  Thus, even for the claims this Court determined can proceed on to trial following summary judgment—including aspects of E.M.'s claims under the D.C. consumer protection statute, unjust enrichment claims, intentional infliction of emotional distress claims, her DCHRA claims for source of income discrimination and retaliation, and her quasi-contract claims under SGF's Patient Bill of Rights—the disputed factual record means E.M. cannot show at this juncture that she has a "substantial likelihood of success" of prevailing on the merits.

In sum, E.M.'s failure to prevail on any claim at summary judgment means she cannot make the required "clear showing" of a likelihood of success on the merits.  *Mazurek*, 520 U.S. at 972.  And because "a failure to show a likelihood of success on the merits alone is sufficient to defeat a preliminary-injunction motion," the Court's inquiry need not proceed any further. *Standing Rock Sioux Tribe*, 205 F. Supp. 3d at 26 (citing *Ark. Dairy Co-op Ass'n, Inc. v. USDA*, 573 F.3d 815, 832 (D.C. Cir. 2009)); *see also Apotex, Inc. v. FDA*, 449 F.3d 1249, 1253–54 (D.C. Cir. 2006) (determining that there is no need to address the other preliminary injunction factors if the plaintiff "has little likelihood of succeeding on the merits of its claim"); *Howard*, 193 F. Supp. 2d at 227 ("[I]f a plaintiff cannot show the likelihood that he will succeed on the merits of his claim, even a very strong showing on the other three factors will not justify the extraordinary remedy of preliminary injunctive relief.").  Indeed, E.M. herself noted that if the "Court is unconvinced" regarding this factor, then this "conclusion should rightly end this

Court's analysis." Pl.'s Mot. at 10. Accordingly, E.M.'s failure to show a likelihood of success on the merits requires that her second motion for a preliminary injunction be denied.

## B.  Irreparable Harm

Given the Court's conclusion with respect to E.M.'s likelihood of success on the merits, it is not necessary to discuss in depth the remaining factors, though for the sake of completeness the Court will address them briefly. To show irreparable harm, the D.C. Circuit requires that "the injury must be both certain and great . . . of such imminence that there is clear and present need for equitable relief to prevent irreparable harm" and that the injury be "beyond remediation." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (citations and internal quotations omitted).

First, the Court can quickly dispose of E.M.'s renewal of the same two arguments the Court rejected the last go-around—that SGF is causing her harm because transporting her frozen eggs to another medical provider risks compromising the eggs' viability, and that SGF is far superior in skill and experience compared to industry competitors and gives E.M. the "the best chance" of successfully having her own child. Pl.'s Mot. at 21. Crucially, E.M. has not identified any new evidence from the discovery process that upends the Court's previous determinations regarding these factors. E.M. still has "not provided any reliable, concrete evidence suggesting that the other clinics in this area would be medically inferior to SGF." *Shady Grove*, 2019 WL 2010523, at *7. And the additional evidence proffered by SGF's experts regarding the safety of transport for E.M.'s eggs, if anything, has weakened her argument on this point. *See* Def.'s Opp'n at 11 (noting E.M. has no expert on this issue while SGF has three). Because the court has already decided these issues and E.M. has not shown the prior decision

"was clearly erroneous or that discovery has materially changed the proper analysis," the Court's previous determination remains unchanged. *U.S. Airline Pilots*, 2011 WL 13273132, at *2 n.1.

E.M. does, however, present a new and novel claim of irreparable harm, arguing that the denial of elective fertility services by SGF "represent[s] discrimination and [an] impingement on [E.M.'s] fundamental right to pursue procreation." Pl.'s Mot. at 21. She claims that "preventing [E.M.] from pursuing her dream of motherhood is *intuitively* or *presumptively* irreparable harm, supported by . . . the fundamental rights at stake and . . . the value of parenthood." Reply in Support of Pl.'s Second Mot. for Prelim. Inj. ("Pl.'s Reply") at 4, ECF No. 88 (emphasis in original). But as E.M. herself points out in her reply, this argument is a "novel question," Pl.'s Reply at 14, and one the Court need not grapple with at this juncture. For even assuming without deciding that E.M.'s delay of her fertility treatments constitutes irreparable harm, given E.M.'s failure to show a substantial likelihood of success on the merits, it is inappropriate to issue the requested preliminary injunction.

### C.  Balance of the Equities and Accord with Public Interest

The remaining factors in the preliminary injunction analysis—the balance of the equities and accord with public interest—also strongly urge against granting injunctive relief. As the Court has emphasized before, the equities and the public interest are of particular importance here, given that E.M. seeks injunctive relief in the form of reinstatement. "Courts have . . . deemed reinstatement to be inappropriate when there is 'evidence of extreme animosity' between the plaintiff and the defendant." *Webb v. District of Columbia*, 146 F.3d 964, 976–77 (D.C. Cir. 1998) (quoting *Williams v. Valentec Kisco, Inc.*, 964 F.2d 723, 730 (8th Cir. 1992)). As the

Court previously noted, the current animosity between the parties is apparent,[4] and the Court

continues to believe that compelling them to maintain a doctor-patient relationship while the

litigation is ongoing could undermine the just and efficient resolution of this matter.  Given

E.M.'s previous actions, reinstatement could also pose a risk to SGF's ability to mount a

vigorous defense to the allegations, which is their protected right.  *See Pursuing Am.'s Greatness*

*v. Fed. Election Comm'n*, 831 F. 3d 500, 511 (D.C. Cir. 2016) ("The balance of the equities

weighs the harm to [the plaintiff] if there is no injunction against the harm to the [defendant] if

there is.").

And despite E.M.'s claims otherwise, the Court's practical concerns of how a workable

doctor-patient relationship could be maintained have not abated; SGF doctors and staff would

need to be on guard for the possibility that any interaction with E.M. could be used for purposes

of gathering evidence rather than advancing E.M.'s medical needs.  This concern is not

something that can be cured, as E.M. suggests, simply by substituting in another doctor from

SGF's "large fertility practice," Pl.'s Mot. at 28, given that the entire medical practice has been

sued.  Nor is it realistic to think that E.M. would primarily be the responsibility of only

"whatever ultrasound technician, phlebotomist, and embryologist is on call on any given day."

Pl.'s Reply at 21.  In short, E.M. has fallen far short of providing the required "extraordinary

---

[4] As discussed in depth in this Court's denial of E.M.'s first motion for a preliminary injunction, E.M. "has taken actions that have led SGF to justifiably distrust her," including surreptitiously recording a phone call with Dr. Osborn, her SGF physician, and reaching out to SGF purportedly as a patient to gather evidence for this case, in a potential violation of Rule 4.2 of the D.C. Rules of Professional Conduct. *See Shady Grove*, 2019 WL 2010523 at *9. While E.M. now attempts to assert that the "lost trust" between the parties that SGF alleges is "factually untrue," Pl.'s Mot. at 28, the Court sees no reason to reevaluate its past determination regarding E.M.'s actions and their consequences to the relationship between the parties at this time.  E.M.'s suggestion that her illicit recording was a recommendation from SGF to "capture information" is disingenuous, *see id.*, and the Court also stands by its prior characterization of the second incident, s*ee Shady Grove*, 2019 WL 2010523, at *9.

circumstances" required for the Court to reconsider its prior determination that reinstating E.M. as an SGF patient is simply not feasible while the litigation is ongoing. *See LaShawn A.*, 87 F. 3d at 1393.  Accordingly, this factor also strongly urges against granting E.M.'s motion for a preliminary injunction.

## V.  CONCLUSION

For the foregoing reasons, E.M.'s second motion for preliminary injunction is **DENIED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  December 10, 2020                            RUDOLPH CONTRERAS
                                                     United States District Judge