**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **E.M.** ) | |
| ) | |
| **Plaintiff**, ) | |
| ) | |
| v. ) | Case No. 1:19-cv-00657 RC |
| ) | |
| **SHADY GROVE REPRODUCTIVE** ) | |
| **SCIENCE CENTER, P.C.** ) | |
| ) | |
| **Defendant**. ) | |
| _____ ) | |

**DEFENDANT'S STATEMENT OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**

Defendant Shady Grove Reproductive Science Center, P.C. ("SGF"), by counsel,

respectfully submits this Statement of Points and Authorities in Opposition to Plaintiff's Motion

for Leave to File First Amended Complaint (the "Motion") filed by Plaintiff EM ("EM") [ECF

No. 119].

**INTRODUCTION**

On the eve of the submission of pre-trial disclosures and trial – over four years after the

scheduling order deadline to file amendments to the pleadings -- EM seeks to add in this case

new claims that have nothing to do with the current issues before the Court. These new claims

concern the transfer of EM's six frozen eggs from SGF to another fertility provider during the

pendency of this litigation. Both parties' counsel are necessary witnesses to the new claims and

would be disqualified from acting as trial counsel. Adding these new claims will require

extensive additional discovery, the incorporation of entirely new fact witnesses, new expert

witnesses, and further dispositive motions practice, all of which will add additional costs, delay

1

the adjudication of EM's current complaint, and prejudice SGF. Instead, as EM acknowledges in

her motion, she can bring these claims in a new case. EM cannot meet the rigorous Rule 16 good

cause standard to amend her complaint, and the motion should be denied.

## BACKGROUND

A.     **The Claims in EM's Original Complaint Concern SGF's Decision to
       Terminate EM as a Patient and Events that Occurred Prior to February
       2019.**

This case concerns SGF's termination of EM as a patient in 2019 and events that led up

to that termination. The case is set for a two-week jury trial to begin February 26, 2024. The

Joint Pretrial Statement is due November 11, 2023. The deadline to seek leave to amend

pleadings was June 17, 2019, over four years ago. (Scheduling Order, [ECF 31]). Fact and expert

discovery closed on September 16, 2019. *Id.* On December 7, 2020, this Court ruled on

dispositive motions, denying EM's Motion for Summary Judgment and granting-in-part and

deny-in-part SGF's Motion for Summary Judgment. (Order, [ECF 90]). Thereafter, the parties

engaged in mediation with the assistance of this Court's mediators.

B.     **The New Claims Concern Events that Occurred During the Litigation and
       Have No Relation to the Current Claims.**

Over four years after the deadline to do so, EM seeks to amend her complaint to add

conversion and intentional infliction of emotion distress counts against SGF based on events that

occurred during the pendency of this case between 2021 and 2022, well *after* the complaint was

filed. These new claims have nothing to do with the original claims regarding EM's termination

by SGF as a patient. Instead, these new claims concern the transfer of EM's six frozen eggs on

two different dates from SGF to her new fertility provider, Genetics and IVF ("GIVF"). In short,

EM claims that SGF held her frozen eggs "hostage" (proposed Amended Complaint ¶ 92 [ECF

119-2]) and refused to timely transfer them to her new fertility provider. As a result, the

proposed amended complaint asserts, incorrectly, that due to SGF's hostage taking of EM's frozen eggs, EM had to cancel fertility treatments with GIVF, resulting in emotional distress to EM.  (*Id.* ¶ 147). These new claims and the facts on which these new claims are based are temporally distinct and substantively different from the original claims and the facts on which they are based as alleged in the original complaint.

## <u>LEGAL STANDARD</u>

This Motion does not present the court with a situation where Rule 15's standard of liberal leave to amend applies. District of Columbia "'case law makes clear that once the court enters a scheduling order, that schedule can only be modified with the court's consent and with good cause shown.'" *Lovely-Coley v. District of Columbia,* 255 F. Supp. 3d 1, 5 (D.D.C. 2017) (denying leave to amend) (quoting *A Love of Food I, LLC v. Maoz Vegetarian USA, Inc.,* 292 F.R.D. 142, 143 (D.D.C. 2013)). Motions for leave to amend filed after the scheduling order deadline has passed, like EM's, are subject to the more stringent "good cause standard" of Rule 16(b)(4) for modification of the scheduling order. *A Love of Food I, LLC,* 92 F.R.D. at 143-44 (collecting cases applying Rule 16 in this circumstance); *Brooks v. Clinton*, 841 F. Supp. 287, 296-97 (D.D.C. 2012); *In re Papst Licensing GmbH & Co. KG Litig.*, 762 F. Supp. 2d 56, 59 (D.D.C. 2011) (good cause standard of Rule 16(b)(4) applies to motion for leave to amend filed after scheduling order deadline has passed); *Lurie v. Mid-Atlantic Permanente Medical Group, P.C.,* 589 F. Supp. 2d 21, 23 (D.D.C. 2008). EM has the burden to show "good cause" for her failure to amend within the time constraints of the scheduling order. *See Phillips v. District of Columbia,* 2023 WL 5607449 (D.D.C. Aug. 30, 2023)(Boasberg, J., Chief Judge). To do so, she "must show both diligence and a lack of prejudice to the opposing part[y]." *Id.* (*quoting In re Papst Licensing GmbH & Co. KG Litig.*, 762 F. Supp. 2d at 59. Even where the moving party

has acted diligently, a motion to amend fails if the other party will suffer prejudice. *See, e.g.*, *Wallace v. Allied Barton Sec. Serv., LLC*, 309 F.R.D. 49, 52–53 (D.D.C. 2015) (denying motion for leave to file an amended complaint under Rule 16 where, although the moving party had acted promptly and diligently, prejudice to other party precluded allowing amendment).

EM's motion fails to even attempt to make either showing.

## ARGUMENT

EM does not even address in her motion her over two-year delay in filing her request after the alleged conversion occurred or the undue delay and prejudice that the amendments will cause SGF. Instead, she argues summarily and incorrectly that the new claims "arise[] from the same facts and circumstances as the claims in the original Complaint"; that the amendment involves "many of the same witnesses"; and that "discovery would be limited and may be covered by existing discovery demands." (Pl. Mot. at 3 [ECF 1119]). As set forth below, none of these bald assertions are accurate. Instead, the amendment will cause undue delay and prejudice to SGF. Courts commonly have found undue delay where, as here, the motion to amend the complaint or answer is filed after discovery has closed, near the start of trial, or after proceedings have been ongoing between the parties for years. *See, e.g.*, *Williamsburg Wax Museum, Inc. v. Hist. Figures, Inc.*, 810 F.2d 243, 247 (D.C. Cir. 1987).

This case has been outstanding for over four years. SGF is entitled to have the issues finally heard at trial and resolved. If the Motion is granted, it will delay the trial in that additional discovery is necessary, SGF will need to designate expert witnesses on the issues, and dispositive motions will need to be briefed and heard causing undue delay and prejudice.

### A.    The New Claims Have Nothing to Do with the Original Claims.

Leave to amend is liberally granted in cases where the "amended complaint has related in a substantive way to the original complaint." *Mississippi Ass'n of Cooperatives v. Farmers Home Admin.,* 139 F.R.D. 542, 544 (D.D.C. 1991) (denying leave to amend where new claims would expand scope of current case). For example, where the amendment simply states an alternative theory of relief. *See Foman v. Davis,* 371 U.S. 178, 182 (1962) (reversing denial of amendment where plaintiff sought to amend complaint to allege new theory based on same facts alleged in original complaint).

In this case, the new claims that EM seeks to add are not based upon the same facts as the original claim in that they occurred *after* the original complaint was filed, as EM admits. These new claims will require SFG to develop facts from a different time period, approximately August 2020 through January 2022, when the last three eggs were transferred out of SGF. EM's new claims allege that during the time that the parties were attempting to mediate and settle this case, in March, April, and May 2021 and in January 2022, SFG "refused to make Plaintiff's frozen eggs, which [it] was storing available to her" and withheld her medical records from her. (Pl. Mot. at 2; [ECF 119]). These claims concern whether SGF exercised dominion and control over EM's frozen eggs and medical records with the intent to deprive EM of her property and in doing so intentionally inflicted emotional distress on her in 2021. The original complaint has nothing to do with whether SGF converted EM's property. Instead, it concerns, among other things, whether SGF retaliated against EM in its termination of her in 2019 and whether SGF is liable to EM for certain acts that occurred during SGF's treatment of EM prior to her 2019 termination.

Where the amended complaint "would radically alter the scope and nature of the case and bears no more than a tangential relationship to the original action, leave to amend should be

denied" even under the more-liberal Rule 15 standard. *Mississippi,* 139 F.R.D. at 544 (citing

Caton v. Barry, 500 F. Supp. 45, 52 (D.D.C. 1980). In denying leave to amend, the Court in

*Mississippi* explained:

> The concern in *Foman*, as in subsequent lower court cases, was that leave to amend should be granted liberally in order to ensure that litigants have their day in court. By contrast, plaintiffs in the instant case would have the sun never set on their's or any case. Leave to amend here would do far more than allow plaintiff to fully litigate all the legal dimensions of their initial action, it would permit plaintiff to transform their case into something entirely new.

*Id.* As in *Mississippi,* EM's request to amend the complaint should be denied.

## B.    The New Claims Will Require Reopening Discovery Delaying the Case and Prejudicing SGF.

None of the "existing discovery demands" have any relevance to the new claims, despite

EM's assertion to the contrary. (Pl. Mot. at 3 [ECF 119]). The discovery in this case was focused

on EM's treatment at SGF and her termination as a patient. Those issues are irrelevant to the new

claims alleging conversion of EM's frozen eggs and the alleged resulting cancellation of GIVF's

fertility treatments and the emotional distress it allegedly caused EM. New discovery requests

will need to be propounded concerning the two different transfers that occurred. The

documentary evidence that will need to be gathered is in the possession of, among others,

counsel for EM, counsel for SGF, SGF's laboratory, and GIVF, a third-party that had nothing to

do with the original case but is a key witness to these new accusations.

By way of example, the evidence that contradicts the proposed amended complaint's

assertions that SGF refused to release EM's frozen eggs in March, April, and May of 2021 and

that as early as March 17, 2021, "EM demanded that SGF release one of her frozen eggs to be

transported to her new doctor" is in the possession of undersigned counsel and counsel for EM,

both past and present. These documents demonstrate that on March 17, 2021, EM's previous

counsel wrote an email message to undersigned counsel **not** requesting that the eggs be transferred (as alleged in the proposed amended complaint) but instead clearly stating, "**I will be back in contact with an actual request to transfer one of E.M.'s eggs when that determination is made by her doctor (GIVF).**" Then on April 7, 2021, EM's counsel again did not request that the eggs be transferred, instead following up: "we will be in contact with specific instructions **on the timing of a transfer once that becomes known**." Then on May 6, 2021, EM's counsel did not write requesting that the transfer occur in May 2021 but instead stated, "Ms. M[] will need access **in the very near future** to the eggs held by SGF." None of these communications are as represented in the proposed amended complaint. After counsel discussed necessary documentation, EM's current counsel requested that three eggs be transferred in June 2021. Again, contrary to the assertions in the Amended Complaint, SGF timely transferred the eggs.

   To gather the evidence on EM's new claims, SGF will need to conduct party discovery in the form of propounding new interrogatories, document requests, and requests for admission. It will also need to subpoena non-party records from counsel who engaged in these communications. SGF will need to take the depositions of the relevant witnesses to the alleged events. Further, SGF will need expert testimony on the transfer issues and the actual reason the fertility treatments were cancelled and unsuccessful, as implicated by EM's new claim and a psychiatric expert on EM's mental state as asserted in conjunction with the intentional infliction of emotional distress claim. SGF also will need third party discovery from GIVF, EM's new fertility provider, concerning, among other things, the alleged cancelled fertility treatments, the actual reason those treatment cycles were cancelled, the transfer issues, and when GIVF told EM

she should transfer the eggs from SGF. Finally, SGF will also need time to research, prepare, and file dispositive motions on these new claims.

This will require reopening discovery to conduct extensive, additional discovery causing undue delay and prejudice to SGF. *See Lover v. District of Columbia,* 248 F.R.D. 319, 324 (D.D.C. 2008) (undue prejudice found where new charges would require additional discovery for the defendants to rebut); *Abdullah v. Washington,* 530 F. Supp. 2d 112, 115 (D.D.C. 2008) (denying under more lenient Rule 15 standard leave to amend where fact that discovery was closed presented "real and substantial" burdens to non-movant). Given the prejudice to SFG, the motion should be denied.

### C.   SGF's Counsel as Well As EM's Current and Previous Counsel are Necessary Witnesses to the New Claims and Would be Disqualified from Conducting the Trial Causing Prejudice to SGF.

EM's assertion that "the proposed [amended complaint] involves many of the same witnesses" as the original complaint is patently false. The witnesses to the new claims set forth in the proposed amended complaint are not the parties or the current witnesses in this case. Instead, the witnesses include the attorneys and GIVF, as evidenced by the email exchanges described above. As this Court is aware, the parties were engaged in ongoing, contentious litigation precluding any communications between them.[1] As a result, when it came time to transfer the frozen eggs during this litigation, the parties themselves did not engage in the communications.

---

[1] As this Court has noted in its opinions in this case, "the current animosity between the parties is apparent." (Memo Opinion Denying Second Motion for Preliminary Injunction at 11 [ECF 96]). SGF had reason to distrust EM: EM "'has taken actions that have led SGF to justifiably distrust her,'" including surreptitiously recording a phone call with Dr. Osborn, her SGF physician, and reaching out to SGF purportedly as a patient to gather evidence for this case, in a potential violation of Rule 4.2 of the D.C. Rules of Professional Conduct." *Id.* at 11 n.4 (quoting *Shady Grove,* 2019 WL 2010523 at *9).

Instead, counsel handled all issues concerning the transfer and are the witnesses to the exchanges that occurred concerning the transfers, the timing of the transfers, and the wording of the documentation that would be needed to effectuate the transfers. These necessary witnesses include undersigned counsel for SGF, EM's previous counsel, Jay McDannell, and EM's current counsel, Barry Coburn, Marc Eisenstein, and Kathryn Zimmrl, as well as the Court's mediator, Robert Fisher, as the issues arose during mediation and settlement discussions.

If this amendment is allowed, SGF will be severely prejudiced in that undersigned counsel is a necessary witness to these new claims and would be disqualified from acting as trial counsel. Rules of Professional Conduct, Rule 3.7 ("A lawyer shall not act as advocate at trial in which the lawyer is likely to be a necessary witness"). Undersigned counsel has represented SGF in this case from its inception in 2019. It would be manifestly unfair to SGF to be forced to hire new counsel to try the current claims. SGF would incur substantial additional expenses for new counsel to learn the case to be able to try it. This prejudice alone to SGF bears on denying the motion to amend, especially when EM can bring a separate case.

**D.      Denying the Motion Will Not Prejudice EM.**

There is no prejudice to EM in denying the motion to amend. As she acknowledges in her Motion, she "is free to bring the proposed amended complaint as a separate, new action." *See Mississippi Ass'n of Cooperatives,* 139 F.R.D. at 545. In *Wallace v. AlliedBarton Sec. Serv, LLC,* the plaintiff, like EM in this case, sought to amend her complaint to add claims based upon events that occurred after the original litigation began. 309 F.R.D. at 52 (new claims based on termination of employment which occurred post-original complaint). The court denied the motion to amend to add these new claims because the defendant would be prejudiced in that it would require the parties to reopen discovery, including taking new depositions of new and old

9

witnesses, and propounding new interrogatories and document requests. Instead, the court noted that the plaintiff could bring her claims in an entirely new case. *Id.* at 53.

After more than four years of contentious litigation, SGF should not have to wait any longer to move this case to a final disposition. EM can bring these new claims in an entirely new case. The Motion to Amend should be denied.

## CONCLUSION

Wherefore, Defendant Shady Grove Reproductive Science Center, P.C. respectfully requests that this Court deny Plaintiff's Motion for Leave to File First Amended complaint. A proposed Order is attached.

Dated: October 3, 2023                     Respectfully submitted,


                                    */s/Lori Vaughn Ebersohl*
                                    Lori Vaughn Ebersohl (D.C. Bar No. 428793)
                                    APATOFF PETERS EBERSOHL, LLP
                                    252 N. Washington Street
                                    Falls Church, VA  22046
                                    Telephone: (703) 534-4440
                                    Facsimile: (301) 279-2819
                                    Email: lebersohl@apatoffpeters.com

                                    *Attorneys for Defendant Shady Grove Reproductive Science Center, P.C.*

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on October 3, 2023 I caused the foregoing to be filed with the Clerk of Court using the CM/ECF system, which will automatically send a notification of such filing to the following counsel of record: Marc Eisenstein, Barry Coburn, Coburn & Greenbaum, PLLC, 1710 Rhode Island Ave, NW, Second Floor, Washington, DC 20036.


*/s/Lori Vaughn Ebersohl*
Lori Vaughn Ebersohl